UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOANNE M. MILLAY, as parent of minor )
child YRM, )
           )
         Plaintiff, )
           )
       v. )         CV-07-178-B-W
           )
SURRY SCHOOL DEPARTMENT, )
           )
         Defendant. )

**ORDER ON PENDING MOTIONS**

Joanne Millay, whose child Y.M. has not attended school for roughly two years, seeks an order placing Y.M. in a life skills program at a local public school pending the Court's review of a due process hearing officer's decision. Surry School Department (Surry) opposes her request and contends that Y.M. should return to Perkins School for the Blind (Perkins), a specialized residential program in Watertown, Massachusetts, or resume her schooling at Surry, which Y.M. attended before and after her stay at Perkins. Pursuant to the stay put provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, the Court determines that Y.M.'s stay put placement is at Surry, and that Surry must fully implement Y.M.'s Individual Education Plan (IEP) last implemented at Perkins.

I.       **INTRODUCTION**

      A.     **Factual History**

Y.M. is a fourteen year-old girl who is blind, has a moderate hearing impairment, and is diagnosed as being on the autism spectrum. *Pupil Eval. Team Mtg. Minutes of April 24, 2006 and IEP* at 6 (Docket # 41-10). During the 2004-2005 school year, Y.M. was a fourth grader at Surry. *Aff. of Melissa Beckwith* ¶ 3 (Docket # 38); *Pupil Eval. Team Mtg. Minutes of April 13,*

*2005* at 2 (Docket # 42-4). During the 2005-2006 school year, Y.M. was a fifth grader, and was tuitioned by Surry at Perkins. *Aff. of Melissa Beckwith* ¶ 3; *Aff. of Lynn Maddocks* ¶¶ 6-7. Her attendance at Perkins was interrupted in late fall of 2005 by health problems. *Aff. of Lynn Maddocks* ¶ 7. She returned to Perkins for several days in March 2006, but was again withdrawn by her mother for health reasons. *Id.* ¶¶ 8-9. Ms. Millay considered Perkins inappropriate for Y.M. not because her IEP was flawed, but because Perkins' distant residential program, with visits from her mother on a weekly basis at best, proved too difficult for Y.M. *Pl.'s Br. Regarding Proper Stay-put Placement for YRM* at 3-4 (Docket # 42) (*Pl.'s Suppl. Br.*). After determining that the Perkins program would not be successful for these reasons, on April 24, 2006, Ms. Millay agreed to Y.M.'s placement at Surry for the summer of 2006. *Consent for Placement/Services* (Docket # 42-3).

Y.M. was a sixth grader during the 2006-2007 school year.[1] She attended Surry from roughly September 5 through September 22 of 2006. *Aff. of Lynn Maddocks* ¶¶ 14, 16-17. Y.M. has not returned to school since that time. *Id.* ¶ 17. Ms. Millay filed a complaint with the Maine Department of Education (MDOE) on February 6, 2007 regarding the 2006-2007 school year. The MDOE complaint investigators issued the complaint investigation report (the MDOE Report) on July 6, 2007. *MDOE Report* (Docket #s 1-8 & 1-9). In the MDOE Report, the investigators described several violations of federal law. However, due to ongoing disagreements, Y.M. has not, to date, returned to school. In the fall of 2007, before filing suit, Ms. Millay requested a special education due process hearing under the IDEA. The hearing officer issued his decision on June 20, 2008. *Special Education Due Process Hr'g* (Docket # 27-2). Ms. Millay's appeal of that administrative proceeding is not ready for review.

---

[1] For the purposes of this order, the Court finds that Y.M. has advanced no further than the eighth grade for the 2008-2009 school year.

## B.      Procedural History

The peculiar posture of this case warrants a comprehensive recital of its procedural history.  On August 31, 2007 Ms. Millay commenced an action against School Union 92 alleging violations of the IDEA; section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; and the Civil Rights Act of 1871, 42 U.S.C. § 1983.[2]  *Withdrawn Compl.* ¶ 2.  Ms. Millay requested an "order that [Y.M.] be placed in school in the least restrictive environment, which is the [Mount Desert Island High School (MDI)] . . . with services set forth in her undisputed [IEP], while the issue of placement is finally resolved in other venues."  *Id.* ¶ 18.  The School Union moved to dismiss, arguing that Ms. Millay had sued the wrong party and had failed to exhaust administrative remedies.  *Mot. to Dismiss* (Docket # 6) (filed in 07-CV-129-B-W) (*Mot. to Dismiss Withdrawn Compl.*).  The School Union pointed out that Ms. Millay had requested a due process hearing on September 11, 2007, less than two weeks after filing her complaint.  *Mot. to Dismiss Withdrawn Compl.* at Ex. 1.  Acknowledging that administrative remedies remained available to her, on October 11, 2007 Ms. Millay moved to withdraw her complaint.  *Mot. to Withdraw* (Docket # 8) (filed in 07-CV-129-B-W).  Ms. Millay explained that "a pending due process hearing . . . may resolve all or part of the issues" she had prematurely brought to the Court's attention.  *Mot. to Withdraw*.  On October 17, 2007 the Court granted her motion.  *J. of Dismissal Without Prejudice* (Docket # 10) (entered in 07-CV-129-B-W).

Just over a month later, on November 27, 2007 Ms. Millay filed a second, identically entitled complaint against the School Union.  *Compl. and Mot. for Preliminary Emergency Inj.* (Docket # 1) (*Compl.*).  Her new complaint and motion for a preliminary injunction are based on

---

[2] The Court construes as arising under § 1983 Ms. Millay's claim for relief under "the U.S. Civil Rights Act, which prohibits discrimination in regard to [educational] services."  *Compl. and Mot. for Preliminary Emergency Inj.* ¶ 2 (Docket # 1) (filed in 07-CV-129-B-W) (*Withdrawn Compl.*).

the same federal statutes.[3]  *Id.* ¶ 2.  In her slightly altered prayer for injunctive relief, Ms. Millay requested that the Court (1) restrain the superintendent of the School Union from forcing Y.M. into a traumatic and counter-productive educational placement; (2) order the School Union "to make its facility at the life skills program in the Trenton Elementary School available to [Y.M.] pending . . . the conclusion of a fair due process hearing";[4] and (3) award her fees and costs, including attorney fees.  *Id.* ¶ 12.  The School Union again moved for dismissal.  *Mot. to Dismiss* (Docket # 6) (*Mot. to Dismiss Compl.*).  Reiterating its exhaustion argument, the School Union noted that Ms. Millay re-filed her request for a due process hearing on November 17, 2007, only ten days before filing suit for the second time.  *Id.* at 3; *Compl.* at Ex. 6 (Docket # 1-7).  The School Union also opposed Ms. Millay's request for preliminary injunctive relief, relying in large part on the exhaustion arguments supporting its motion to dismiss.  *Opp'n to Request for Preliminary Inj.* (Docket # 8) (*Def.'s Opp'n*).

On January 2, 2008, in a consolidated submission, Ms. Millay responded to the School Union's motion to dismiss and in support of her request for injunctive relief.  *Pl.'s Resp. to Mot. to Dismiss and Reply to Def.'s Opp'n* (Docket # 11) (*Pl.'s Resp. & Reply*).  Ms. Millay clarified that her "request for preliminary injunction under Title 20 U.S.C. Section 1415(j) is for the Court to order [the School Union] to place [Y.M.] in a public school life skills program with other children with disabilities that is within reasonable traveling distance of the student's home and is not at the Surry Elementary School."  *Pl.'s Resp. & Reply* at 3.  Ms. Millay explained that her complaint and motion "was not filed to usurp the due process hearings, but to ensure stability for

---

[3] Ms. Millay fleshed out her interpretation of the "U.S. Civil Rights Act," stating that it "prohibits discrimination in regard to [educational] services and also prohibits retaliation toward individuals who advocate for the provision of [educational] services on behalf of any person who has a disability."  *Compl.* ¶ 2.  The Court construes this claim to arise under § 1983.  *See supra* note 2.

[4] It is not clear what caused Ms. Millay to change her preferred placement from MDI to Trenton Elementary School. Because the Court finds that for the purposes of this Order Y.M. is in eighth grade, *see supra* note 1, it is immaterial that Surry must tuition to nearby high schools students who are in grades nine and above, and for whose public education Surry is responsible.  *See Aff. of Robert Liebow* ¶¶ 2-3.

[Y.M.] as provided under Title 20 U.S.C. Section 1415(j)." *Id.* at 1.  In its reply, the School

Union again directed its exhaustion arguments to Ms. Millay's clarified, if not new, claim that 20

U.S.C. § 1415(j)—the stay put provision of the IDEA—requires that the Court grant her motion

for injunctive relief.  *Reply Mem. in Support of Mot. to Dismiss Compl.* (Docket # 13) (*Def.'s

Reply*).

The Court referred to the magistrate judge Ms. Millay's motion for a preliminary

injunction and the School Union's motion to dismiss.  The magistrate judge recommended that

the Court grant the motion to dismiss on the ground that Ms. Millay had not exhausted her

administrative remedies.  *Rec. Dec.* (Docket # 18).  The magistrate judge recognized that to

dismiss the Complaint would effectively deny the motion for a preliminary injunction.  *Id.* at 6.

Ms. Millay filed her objection to the Recommended Decision and the School Union responded.

*Pl.'s Obj. to Rec. Dec.* (Docket # 19); *Def.'s Resp. to Obj. to Rec. Dec.* (Docket # 20).  Without

prior order of the Court, Ms. Millay filed a reply, which was joined with a request for oral

argument on her motion for a preliminary injunction.  *Pl.'s Reply and Request for Oral

Argument* (Docket # 21).  The School Union promptly moved to strike Ms. Millay's reply and

request for oral argument.  *Def.'s Mot. to Strike Pl.'s Reply Br. Objecting to the Rec. Dec.*

(Docket # 23) (*Def.'s Mot. to Strike*).

The Court granted Ms. Millay's request for oral argument, denying in part the motion to

strike.  *Order Granting Mot. for Oral Argument* (Docket # 25).  The Court now grants the

remainder of the School Union's motion and strikes Ms. Millay's reply, which was filed in

violation of Local Rule 72.1.  D. Me. Loc. R. 72.1 (explicitly stating that "[e]xcept by prior order

of the court, no reply memorandum shall be filed" following objection to a recommended

decision and a response thereto).  Ms. Millay does not address her violation of Local Rule 72.1

either in the offending reply or in her response to the motion to strike.  *See Pl.'s Reply and Request for Oral Argument*; *Pl.'s Reply to Def.'s Mot. to Strike* (Docket # 24).  The Court will not consider the reply in its disposition of the parties' motions.

On June 20, 2008, a week before the Court granted Ms. Millay's request for oral argument, the due process hearing officer issued his final decision.  *Millay v. Surry Sch. Dep't*, 08.049(H) & *Surry Sch. Dep't v. Millay*, 08.051H (June 20, 2008) (Docket # 27-2).  Noting the procedural effect of the hearing officer's decision, the School Union moved to stay oral argument because (1) the Court needed to develop an evidentiary record before it could determine whether Ms. Millay deserved injunctive relief, and (2) the Court should take into account Ms. Millay's possible appeal of the hearing officer's decision.  *Def.'s Mot. to Stay Oral Argument* (Docket # 27).  The Court granted the motion to stay oral argument.[5]  *Order Granting Def.'s Mot. to Stay Oral Argument* (Docket # 28).  The Court explained that the better course was for the magistrate judge to hold a scheduling conference during which she could determine the orderly progression of the case.  *Id.*  The magistrate judge held this conference on July 22, 2008 and issued a Scheduling Order.  *Report of Conference and Order* (Docket # 34) (*Scheduling Order*).

The magistrate judge resolved three issues at the scheduling conference.  First, in response to the School Union's oft-raised argument that Ms. Millay had incorrectly sued it, not Surry, *see, e.g.*, *Mot. to Dismiss Compl.* at 5, Ms. Millay was instructed to move to amend her Complaint to correct that error.  *Scheduling Order*.  Second, the parties were instructed to simultaneously file supplemental briefs, affidavits, and other evidentiary materials regarding the

---

[5] Ms. Millay moved for reconsideration of the Court's stay order, believing the stay was a denial of her motion for oral argument.  *Pl.'s Obj. to Def.'s Mot. to Strike Pl.'s Request for Oral Argument* (Docket # 30).  The Court denied her motion for reconsideration, noting that her request for oral argument was only stayed, not denied.  *Order* (Docket # 32).  The Court now denies her motion for oral argument.  The legal issues have been fairly presented and in the Court's view, nothing is to be gained from an oral argument at this stage.

merits of Ms. Millay's motion for a preliminary injunction. *Id.* Finally, the parties were advised that if and when Ms. Millay appealed the hearing officer's decision, she may do so by amending her Complaint in this case instead of initiating a new civil action, and the Court's standard IDEA scheduling order would govern subsequent proceedings. *Id.*

The three events anticipated in the scheduling order have all come to pass. Ms. Millay moved to substitute defendants, and on August 27, 2008 the magistrate judge ordered the Complaint amended to "replace School Union 92 with the Surry School Department as the named defendant." *Order Granting in Part and Denying in Part Mot. to Amend* (Docket # 43) (*Order on Mot. to Amend*).[6]

On August 20-21, 2008, the parties filed supplemental briefs and evidentiary materials on the merits of Ms. Millay's motion for injunctive relief. *Def.'s Mot. for Stay Put Placement*[7] (Docket # 37) (*Def.'s Suppl. Br.*); *Pl.'s Suppl. Br.* As she did in her reply in support of her motion for injunctive relief, Ms. Millay claims that a life skills program in a public high school is the appropriate stay put placement for Y.M. Surry maintains that it would be contrary to the IDEA to order a stay put placement at a local public high school that Y.M. has never attended, and it advocates for stay put placement at either Perkins or Surry.

Finally, on September 19, 2008 Ms. Millay timely amended her Complaint to include a new Count II that requests review of the hearing officer's decision pursuant to 20 U.S.C. § 1415(i)(2)(A). *Am. Compl. (Injunctive Relief Requested)* ¶ 157 (Docket # 44) (*Am. Compl.*). Ms. Millay attached three exhibits to the Amended Complaint, two of which Surry quickly

---

[6] The remainder of this Order refers to the defendant as Surry, which has "acknowledge[d] it is currently the party with responsibility for providing a [free appropriate public education] for YM." *Order on Mot. to Amend.*
[7] Although styled as a motion, Defendant's submission is better described as a supplement to the Opposition to Request for Preliminary Injunction. Accordingly, the Court orders that the docket be altered to reflect the fact that Docket # 37 is not a Motion, but is rather a Brief in Support of Defendant's Opposition to Plaintiff's Request for Preliminary Injunction.

moved to exclude as impermissible supplements to the administrative record.  *Def.'s Resp. to Pl.'s Mot. to Am. Compl. and Mot. to Exclude Evidence Beyond the Admin. R.* (Docket # 47) (*Mot. to Exclude*).  Ms. Millay responded and Surry replied.  *Pl.'s Reply Mem. in Support of Mot. to Amend Compl. and in Opp'n to Mot. to Exclude Evidence* (Docket # 49) (*Pl.'s Opp'n to Mot. to Exclude*); *Def.'s Reply in Support of Mot. to Exclude Evidence* (Docket # 51) (*Reply in Support of Mot. to Exclude*).

## II.   DISCUSSION

### A.   Procedural Posture

Ms. Millay's Complaint was also a motion for injunctive relief, and was the target of Surry's motion to dismiss; both motions are now before the Court.  As the magistrate judge recognized in her Recommended Decision, dismissal of Ms. Millay's Complaint before it was amended would effectively have denied her motion for injunctive relief.  *Rec. Dec.* at 6; *see Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 115 (1st Cir. 2003) ("Injunctive relief . . . is available only if the plaintiff[] [has] stated a valid cause of action . . . .").  Were the Court to dismiss the original Complaint now, Surry's success would be short-lived, however, because in her Amended Complaint, Ms. Millay retains as Count I her request for a stay put placement.  Moreover, because Surry replaced the School Union as the proper defendant, the only remaining ground on which Surry has demanded a dismissal is Ms. Millay's alleged failure to exhaust her administrative remedies.  *Compare Mot. to Dismiss Compl.* at 10 (urging dismissal based on Ms. Millay's filing suit against the wrong party and her failure to let the "due process hearing procedure run its course"), *with Order on Mot. to Amend* (permitting replacement of the School Union with Surry).  Now that the hearing officer has issued his decision and Ms. Millay has brought that decision to the Court for review, the exhaustion argument is no longer tenable, at

least with regard to the Amended Complaint's prayer for stay put placement. *Nieves-Marquez*, 353 F.3d at 118 ("The plain language of IDEA indicates that *judicial* review is not itself a component of the exhaustion of *administrative* remedies.").

The recent amendment of the Complaint creates a procedural trap. There is the uncontroversial procedural rule that an "amended complaint completely supersedes [an] original complaint, and thus the original complaint no longer performs any function in the case." *Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1476 (2d ed. 1990)). A supplemental pleading, in contrast, "stands with the original pleading and is a mere addition to, or continuation of, the original complaint." *United States v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957). Although Ms. Millay retained as Count I in the Amended Complaint her request for a stay put placement, she did not renew her motion for a preliminary injunction. If the original Complaint is superseded, Ms. Millay's motion for preliminary injunction would be superseded as well, but this is clearly not what Ms. Millay intended.

Mindful of its responsibility to construe liberally Ms. Millay's *pro se* pleadings, *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir. 1990), the Court views her original Complaint as a motion for a preliminary injunction, which withstands her Amended Complaint's superseding force. *See* Fed. R. Civ. P. 7. Accordingly, even though the Amended Complaint is the operative pleading in this case, and "replace[s] the original complaint lock, stock, and barrel," *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008), the Court treats Ms. Millay's Amended Complaint as a supplemental pleading and her motion for a preliminary injunction stands.

### B.       The School Union's Motion to Dismiss

Before Ms. Millay amended her Complaint, its dismissal effectively would have denied her motion for a preliminary injunction.  This is no longer true.  The original Complaint has been superseded by the Amended Complaint.  Moreover, the motion for a preliminary injunction, because it is being construed as standing alone, now survives dismissal of the original Complaint.  In other words, Surry would be in no better or worse stead, procedurally or substantively, were the original Complaint dismissed.  Accordingly, because the Court can provide Surry "'no specific relief through a decree of a conclusive character,' as distinguished from a mere advisory opinion," the Court dismisses Surry's motion to dismiss as moot. *Johansen v. United States*, 506 F.3d 65, 70 (1st Cir. 2007) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)).

### C.       Y.M.'s Educational Placement

#### 1.       The Positions of the Parties

In her motion for injunctive relief, Ms. Millay requested that the Court order Surry to accommodate Y.M. at "the life skills program in the Trenton Elementary School."  *Compl.* ¶ 12. In her reply, which specifically characterized her request as one for a "stay put" placement under 20 U.S.C. § 1415(j), Ms. Millay asked the Court to "place [Y.M.] in a public school life skills program with other children with disabilities that is within reasonable traveling distance of the student's home and is not at [Surry]."  *Pl.'s Resp. & Reply* at 3.  Finally, in her supplemental brief, Ms. Millay reiterated her general request for placement in a "public school life skills program, . . . close to home, with regular education peers to the maximum extent possible (comparable to all of [Y.M.]'s years at Surry school)."  *Pl.'s Suppl. Br.* at 7.  At the same time, however, Ms. Millay's resistance to Surry's suggested placements has intensified:

> [Y.M.'s] placement can no longer be at Surry, even if it now wished to correct its violations.  It cannot be Day Treatment / Day Habilitation Programs due to their unsuitability and to such placement constituting a unilateral and unjustified change.  It cannot be Perkins, due to the seriousness of medical concerns and to the fact that it was not her last placement.

*Id.* at 8.  The reason Ms. Millay does not want to send Y.M. back to Surry is that in her view, "as the result of past mistreatment at [Surry], [Y.M.] was and continues to be unable to enter that building without physical force being applied."  *Pl.'s Resp. & Reply* at 2.  Ms. Millay would never send Y.M. to the Stillwater Academy or Kids Peace Center for Youths in Crisis, the Day Treatment / Day Habilitation Programs suggested by Surry, because these programs are, in her words, "for students who are too emotionally disturbed and/or too anti-social to be educated in the public school system."  *Pl.'s Suppl. Br.* at 2.  What is more, she says, "[n]either has a program for students who are blind or deaf-blind[, and] [o]ne of them is considered too dangerous for a tiny, deaf-blind student like [Y.M.] to attend."  *Id.*  Finally, she argues that Y.M. should not be sent back to Perkins in Massachusetts because she fears that Y.M.'s tremulousness and anorexia, the health problems that caused her withdrawal in March of 2006, will recur.  *Id.* at 4.

Surry disagrees with Ms. Millay's claim that Y.M.'s stay put placement is at Trenton or MDI, neither of which Y.M. has ever attended.  Surry argues that "Y.M.'s stay put placement is at the Perkins School for the Blind because it was the last placement and program that the parties agreed upon."  *Def.'s Suppl. Br.* at 14.  As a fall-back, Surry acknowledges that Surry was actually the last school Y.M. attended.  Accordingly, Surry requests that if the Court were to find that Surry should be Y.M.'s stay put placement, the placement "should be consistent with the program actually last delivered to Y.M., rather than the program she received at the Perkins School."  *Id.*  Previously, however, Surry had found no fault with the MDOE Report's indication

that Y.M.'s "last placement was the Surry Elementary School, and the last placement before that was the Perkins School."[8] *Def.'s Resp. to Obj. to Rec. Dec.* at 5 n.4.

### 2.      The Stay Put Provision

With exceptions not relevant here, the stay put provision of the IDEA requires that

> during the pendency of any proceedings conducted pursuant to this section, *unless the State or local educational agency and the parents otherwise agree*, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j) (emphasis added).  The purpose of the stay put provision is to "strip schools of the *unilateral* authority they had traditionally employed to exclude disabled students . . . from school" and to protect children from any retaliatory action by the local educational agency. *Honig v. Doe,* 484 U.S. 305, 323 (1988) (interpreting the stay put provision of the Education for the Handicapped Act, the IDEA's predecessor).

Typical litigation under the stay put provision involves a school district's decision either to withdraw services, or to relegate a formerly mainstreamed student to a special education classroom.  *See, e.g.*, *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 373 (1985). The first question in these circumstances is whether the school's action actually changed the student's "then-current educational placement."  *See Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984) (to show change in educational placement, parent "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the education program"); *Cavanagh v. Grasmick*, 75 F. Supp. 2d 446, 468 (D. Md. 1999) ("[A] fundamental change in, or elimination of a basic element of, the educational program, which adversely affects the child's learning experience in a significant way, is what constitutes a 'change in educational

---

[8] Surry's change of position on this critical issue is unexplained.

placement' for purposes of the IDEA.").  If the school has changed the "then-current educational placement," it has violated the stay put provision, and must return to the *status quo* while the state's due process hearing officer and the courts determine whether that action was appropriate.[9]

The stay put provision has a much less restrictive effect on a parent who, frustrated with her child's current placement, unilaterally removes that child from school and enrolls her, typically, in a private school at her own expense with the hope that the school will reimburse her. The First Circuit explained the parent's likely calculus:

> While the law does not require parents to keep a child in a program they feel is inappropriate, it operates in such a way that parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of State and local school officials, do so at their own financial risk.  Parents win the gamble if, and to the extent that, the placement they preferred is ultimately adjudged appropriate and the [challenged] IEP inappropriate.  Elsewise, the costs arising out of a unilateral placement are not shifted.

*Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 1000 (1st Cir. 1990) (quotation and citation omitted).  The stay put provision thus operates against a school as does the automatic stay in bankruptcy operates against a creditor, who violates it at his or her peril, *see Casey K. v. St. Anne Cmty. High Sch. Dist No. 302*, 400 F.3d 508, 511 (7th Cir. 2005); however, as against a parent, the provision marks an opportunity to trigger a school's reimbursement liability, should the parent prevail in his or her challenge to the school's provision of educational services.  *See C.G. v. Five Town Cmty. Sch. Dist.*, 513 F.3d 279 (1st Cir. 2008) ("Although reimbursement of parental expenses for private residential placements sometimes is available under the IDEA, such reimbursement is contingent upon a showing that the parents diligently pursued the provision of appropriate services from the public school system, yet the school system failed to provide those services; and that the private placement is a suitable alternative.").

---

[9] Alternatively, the school can move for a preliminary injunction to change the *status quo*.  See discussion *infra* Part II.C.4, applying *Doe v. Brookline Sch. Comm.*, 722 F.2d 910 (1st Cir. 1983), to Ms. Millay's motion for a preliminary injunction.

This case does not follow either of these well-trod paths.  Although Ms. Millay unilaterally withdrew Y.M. from Surry in September of 2006, she does not seek primarily reimbursement for out-of-pocket expenditures for an alternate placement.  Instead, she asks the Court, in effect, to determine Y.M.'s placement before she was unilaterally withdrawn from Surry, and to order Surry to send Y.M. to a similar, but not identical, school.  Further, Ms. Millay has highlighted Surry's primary unilateral action, which occurred during the summer of 2007, when Y.M. had already been out of school for almost a year.  In other words, there was no "then-current placement" in effect which could have been protected by the stay put provision and violated by Surry.[10]

Although the IDEA does not define "then-current educational placement," the First Circuit has noted that the stay put provision "is designed to preserve the status quo pending resolution of administrative and judicial proceedings under the [IDEA].  The preservation of the status quo ensures that the student remains in the last placement that the parents and the educational authority agreed to be appropriate."  *Verhoeven v. Brunswick Sch. Comm.*, 207 F.3d 1, 10 (1st Cir. 1999) (quotation and citation omitted).  At the same time, *Verhoeven* recognized that the stay put provision includes an exception to the general rule: "the interim placement during proceedings challenging the child's regular placement shall be the child's current educational placement, 'unless the . . . educational agency and the parents otherwise agree.'"  *Id.* at 7-8 (alteration in original) (quoting 20 U.S.C. § 1415(j)).

A stay put inquiry therefore focuses not only on the last agreement between the parties that defines the "then-current educational placement," but also on agreements the parties may

---

[10] Ms. Millay alleges that Surry "unilaterally altered [Y.M.'s] type of placement from 'public school life skills' placement" during June of 2007 when it advocated placement in a day treatment or day habilitation program.  *Pl.'s Suppl. Br.* at 2.  Ms. Millay goes so far as to claim "[t]hat unilateral alteration was the origin of the current litigation."  *Id.*

have entered into to opt out of that placement.  Importantly, "[n]othing in section 1415(j) requires the parties to 'otherwise agree' on a particular interim placement for the exception to apply; the exception apparently may apply if the parties 'otherwise agree' to let a third party decide the interim placement."  *Id.* at 8.  For example, *Verhoeven* reasoned that an agreement between the parents and the school to let a due process hearing officer resolve the stay put placement dispute was an agreement to opt out of the "then-current educational placement."  *Id.* Refusing to disturb a factual finding that the parties had so agreed, the court held the dissatisfied parents to the hearing officer's ruling on the issue.[11]  *Id.*

Complementing *Verhoeven* is the Supreme Court's observation in *Burlington* that resolution of a due process hearing in a parent's favor "would seem to constitute agreement by the State to the change of placement."  *Burlington*, 471 U.S. at 372; *see* 20 U.S.C. § 1415(j) (then-current educational placement applies "unless the *State or local* educational agency and the parents otherwise agree") (emphasis added).  In *Burlington*, the parents requested a due process hearing to challenge an IEP that a public school had proposed, unilaterally removed their child from his "then-current educational placement," and placed him in a private school.  *Burlington*, 417 U.S. 362-63.  The Massachusetts Department of Education's Bureau of Special Education Appeals eventually ruled that the private school placement was appropriate, and the IEP proposed by the public school was not.  *Id.*  Assuming that the parents had initially violated the stay put provision, the *Burlington* Court decided that the violation ended upon issuance of the favorable due process hearing decision, reasoning that the due process hearing result constituted, in *Verhoeven* parlance, an agreement by the parties to opt out of the *status quo*.  *See id.* at 372

---

[11] Like the parents in *Verhoeven*, Ms. Millay asked the due process hearing officer for the same stay put relief she seeks from the Court.  *Hr'g Officer Pre-Hr'g Mem.* at 1 (Docket # 37-2).  The hearing officer denied her motion.  *Id.* Unlike the parents in *Verhoeven*, however, Ms. Millay never agreed to be bound by the hearing officer's decision, and Surry makes no argument in support of its opposition on this basis.

(recognizing parents' right to reimbursement from the date of the due process hearing decision, and from earlier date of unilateral withdrawal should equitable considerations favor such relief).

Courts have applied the *Burlington* Court's construction of the statute.  *See, e.g.*, *Bd. of Educ. v. Schutz*, 290 F.3d 476, 482 (2d Cir. 2002); *Susquenita Sch. Dist. v. Raelee S.*, 96 F.3d 78, 83 (3d Cir. 1996); *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 641 (9th Cir. 1990) (per curiam).  State and federal educational authorities have promulgated regulations that follow *Burlington*.  *See* 34 C.F.R. § 300.518(d); 05-071-101 Me. Code R. § XVI(20)(D) (2008); 05-071-101 Me. Code R. § 13.5 (2006).  To synthesize, the Court concludes that (1) Y.M.'s stay put placement is the last placement that Ms. Millay and the MDOE or Surry agreed to be appropriate, *Verhoeven*, 207 F.3d at 10; and (2) the Court should order this placement unless it makes a factual determination that Ms. Millay and the MDOE or Surry agreed otherwise, either through referral to a third party, *id.* at 8, or by resolution of a due process hearing in Ms. Millay's favor.  *Burlington*, 471 U.S. at 372.

### 3.    MDOE's Agreement with Ms. Millay

The due process hearing, 20 U.S.C. § 1415(f), is not the only way a parent of a disabled child can force a school's compliance with the IDEA.  Under general rulemaking authority conferred by 20 U.S.C. § 1221e-3, the Department of Education requires that states enact a Complaint Resolution Procedure (CRP),[12] an alternative to the statutory due process hearing. *See* 34 C.F.R §§ 300.151-.153 (2008).  When the regulations were amended in 1999, the commentary recognized the important purposes the CRP serves:

> State responsibility for ensuring compliance with the [IDEA] includes resolving complaints even if they raise issues that could have been the subject of a due process hearing request.  A State's general supervisory responsibility is not satisfied by relying on private enforcement efforts through due process actions for all issues that could be the subject of a due process hearing.  In addition, the State

---

[12] *See Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 45 n.3 (1st Cir. 2000).

> complaint process and mediation provide parents and school districts with
> mechanisms that allow them to resolve differences without resort to more costly
> and litigious resolution through due process.

64 Fed. Reg. 12646 (Mar. 12, 1999). Although a due process hearing officer's resolution of an

issue is binding on the CRP where the issue is resolved in both fora, 34 C.F.R. § 300.152(c)(2),

the CRP is not a procedure without substance.[13]  Under the CRP, the State Education Agency

(SEA) must "[r]eview all relevant information and make an independent determination as to

whether the public agency is violating a requirement of [the IDEA]." 34 C.F.R. § 300.152(a)(4).

The SEA must also "[i]ssue a written decision to the complainant that addresses each allegation

in the complaint and contains . . . [f]indings of fact and conclusions; and . . . [t]he reasons for the

SEA's final decision." 34 C.F.R. § 300.152(a)(5).

On February 6, 2007, months before she filed her due process hearing request regarding

the 2007-2008 school year, Ms. Millay started the CRP process as provided by Maine law. *See*

20-A M.R.S.A. § 7206; 05-071-101 Me. Code R. § XVI(4) (2008); 05-071-101 Me. Code R. §

13.5 (2006). She alleged numerous procedural and substantive IDEA violations during the 2005-

2006 and 2006-2007 school years, the most serious being Surry's failure to implement Y.M.'s

IEP and failure to provide a free appropriate public education. *MDOE Report* at 2. The MDOE

Report was completed on July 6, 2007. *Id.* Because the MDOE Report is a result of the CRP

and not a due process hearing, neither Ms. Millay nor Surry had the statutory right "to be

accompanied and advised by counsel," "to present evidence and confront, cross-examine, and

compel the attendance of witnesses," or "to [a] written . . . verbatim record." *See* 20 U.S.C. §

1415(h). This is not to say, however, that the CRP was incomplete or insubstantial. According

---

[13] Giving due weight to the CRP for the stay put analysis is not the same thing as deciding that it is a "proceeding brought under" 20 U.S.C. § 1415 for purposes of awarding attorneys' fees under § 1415(i)(3)(B), an issue on which the courts of appeal do not agree. *See, e.g., Vultaggio v. Bd. of Educ.*, 343 F.3d 598, 602 (2d Cir. 2003) (deciding that a CRP is not a "proceeding" under § 1415 for attorney fees purposes); *Lucht v. Molalla River Sch. Dist.*, 225 F.3d 1023, 1029 (9th Cir. 2000) (deciding that a CRP is a "proceeding" under § 1415 for attorney fees purposes).

to the MDOE Report, the complaint investigators interviewed nineteen people (including Lynn Maddocks and James Boothby, who both submitted affidavits in support of Surry's supplemental brief) and received over 550 pages of documents submitted by both parties.

The findings of the MDOE complaint investigators were extremely favorable to Ms. Millay. The MDOE found, among other IDEA violations during the fall of 2006—the critical timeframe for stay put purposes—that Surry had failed to provide Y.M. a free appropriate public education, hire qualified staff to implement Y.M.'s IEP, and develop or implement Y.M.'s IEP for the summer of 2006 and for the 2006-2007 school year. *MDOE Report* at 55-59. The MDOE Report included a detailed Corrective Action Plan that required Surry to take various curative measures, including convening the Pupil Evaluation Team (PET) meeting within ten days to "adopt the Perkins' IEP which will provide a [free appropriate public education] in the least restrictive environment" for Y.M., and the implementation of the Perkins IEP during the summer of 2007. *Id.* at 64.

In almost all her submissions to the Court, Ms. Millay refers to the MDOE Report. *See Withdrawn Compl.* ¶ 11 (MDOE Report found numerous violations of federal law); *Compl.* ¶ 4 (withdrawn complaint was filed to enforce MDOE Report); *Pl.'s Resp. & Reply* at 2 ("To date, the district has not even complied with the [MDOE Report] . . . ."); *Pl.'s Obj. to Rec. Dec.* at 3 (MDOE found that implementation of Y.M.'s Perkins IEP was essential); *Pl.'s Suppl. Br.* at 5 (noting that MDOE Report has still not been implemented). Surry, on the other hand, largely ignores it. *See, e.g.*, *Def.'s Resp. to Obj. to Rec. Dec.* at 5 n.4 (suggesting substantial disagreement "over a number of the factual issues set forth in the Maine DOE's complaint investigation report"); *Def.'s Suppl. Br.* at 2 (implying as a matter of logic that the 2006-2007 school year's termination stemmed the flow of whatever consequences the MDOE Report may

18

have had, Surry explains that "[a] complaint investigation report addressed issues involving [Y.M.'s] 2006-2007 school year, and issued a corrective action plan relating to that year").

As *Burlington* recognized, the fact that a decision or agreement does not presently have prospective effect does not mean that it is irrelevant. *Burlington*, 471 U.S. at 372 (explaining that a prior due process hearing officer decision was important to the reimbursement analysis). Here, the MDOE Report plays an important role in determining Y.M.'s stay put placement. In defining "then-current educational placement" as the last agreed upon placement, the *Verhoeven* court nowhere indicated that it intended to count only those agreements between the parents and the local educational agency. To the contrary, the First Circuit explained that the student should remain "in the last placement that the parents and the educational authority agreed to be appropriate." *Verhoeven*, 207 F.3d at 10. In view of the suggestion in *Burlington* and 20 U.S.C. § 1415(j) that either the "State or local educational agency" may be a party to an agreement to opt out of the "then-current educational placement," the Court declines to assume *Verhoeven* would discount an agreement between the State educational agency and the parent for stay put purposes. Accordingly, the Court determines that the MDOE Report, which recommends the implementation of Y.M.'s Perkins IEP at Surry, is the last agreement between Ms. Millay and the educational agency and defines Y.M.'s proper stay put placement.

The Court cannot accept Surry's argument that it "never agreed" to implement the Perkins IEP at Surry, *Def.'s Suppl. Br.* at 9. First, under the IDEA, *Burlington*, and Maine law, the local educational agency's position is not decisive when it comes to issues arising under the IDEA. *See, e.g.*, 20-A M.R.S.A. § 7206(5) (providing for enforcement of CRP decisions by the MDOE commissioner against local school administrative units by withholding financial aid). Second, the MDOE complaint investigators determined that Y.M.'s PET had approved the

Perkins IEP at its April 24, 2006 meeting for implementation at Surry, and that Surry's contrary position was "untenable."[14]  *MDOE Report* at 46.  The Court will not accept Surry's invitation to disregard MDOE factual findings on which Surry had ample opportunity to be heard.

Further, the Court cannot accept Surry's argument that "if the Court were to conclude that the last agreed upon placement was at [Surry], the program to be delivered there would be the program Y.M. last received there, not the program that was delivered to Y.M. the previous year at Perkins."  *Def.'s Suppl. Br.* at 12.  The MDOE Report already determined that the program Y.M. last received at Surry was inadequate under the IDEA.  *MDOE Report* at 47-48. For stay put purposes, it is sufficient that the MDOE agreed with Ms. Millay that the Perkins IEP should be implemented at Surry, regardless as to whether it actually was implemented.[15]

### 4.  Ms. Millay's Motion for Preliminary Injunction

The rationale behind Ms. Millay's claim that Y.M. can and should be placed in a school she has never attended is that continuity of physical location is not essential to an educational placement under the IDEA.  Ms. Millay argues that "[p]lacement is not defined by location or school building, but by the features of the student's programming and the setting in which it is conducted."  *Pl.'s Resp. & Reply* at 1.  From this proposition she reasons that any location in which Y.M.'s IEP can be implemented without statutorily significant change can serve as Y.M.'s stay put placement.

Ms. Millay's position could be justified.  But, it requires an extension of existing authority, which address whether the stay put provision is necessarily violated when an educational agency moves a student from one school to another.  *See Weil v. Bd. of Elementary*

---

[14] Having twice moved to dismiss Ms. Millay's Complaint on exhaustion grounds, and having urged the Court to allow the administrative process to develop a full factual record, Surry's current posture appears somewhat a reversal.
[15] "Equity regards that as done which ought to be done."  *Camp v. Boyd*, 229 U.S. 530, 559 (1913).

& *Secondary Educ.*, 931 F.2d 1069, 1072 (5th Cir. 1991) (school board's transfer of student from one school to another did not amount to a change in student's educational placement); *Concerned Parents & Citizens for Continuing Educ. at Malcolm X (PS 79) v. New York City Bd. of Educ.*, 629 F.2d 751, 754 (2d Cir. 1980), *cert. denied*, 449 U.S. 1078 (1981) (holding that a transfer from one school to another school within same school district with similar but less "innovative" programs was not a change in educational placement within the meaning of 20 U.S.C. § 1415 as the transfers did not affect the "general educational program in which a child . . . is enrolled").   As the Court of Appeals for the Second Circuit stated, "strong policy considerations" undergird these decisions, which provide local educational agencies with necessary flexibility to "implement even minor discretionary changes within the educational programs provided for [their] students" without having to litigate these minor changes in due process hearings.  *Concerned Parents*, 629 F.2d 751, 755-56 (2d Cir. 1980).

To accept Ms. Millay's reasoning, however, the Court would usurp the roles of a local educational agency and due process hearing examiner, essentially determining in the first instance what comparable or alternative educational placement is most appropriate for Y.M.  *See Pl.'s Resp. & Reply* at 3 ("[Surry] continues to exclude Y.M. from any placement that is *comparable to her last agreed-upon placement*, which was . . . a life skills program with other students in a public school.") (emphasis added); *but see Wagner v. Bd. of Educ.*, 335 F.3d 297, 302 (4th Cir. 2003) ("Ordering the child to enter an alternative placement . . . causes the child not to remain in his or her then-current educational placement, a result that contravenes the statutory mandate and turns the statute on its head by transforming a tool for preserving the status quo into an implement for change.").   The Court concludes that by asking for a placement at Trenton

Elementary School or MDI, Ms. Millay is not seeking a stay put order; she is instead seeking to alter the *status quo*.

The First Circuit has made clear that under the IDEA, and "in view of the congressional preference for maintenance of the current educational placement, a party that seeks to modify an existing educational placement, program or services must proceed by a motion for preliminary injunction." *Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 919 (1st Cir. 1983). To qualify for this "*extraordinary* relief," *id.*, Ms. Millay must show "(1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). If Ms. Millay fails to demonstrate a substantial likelihood of success on the merits of her claims, "the remaining factors become matters of idle curiosity." *New Comm Wireless Servs. v. Sprintcom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002). Because the Amended Complaint is the operative pleading in this case, the Court looks to it to determine the claims on which Ms. Millay bears the burden of proof.

In Count I, Ms. Millay claims that Y.M. is entitled to a stay put placement "in her last agreed upon placement[,] . . . namely a public high school life skills placement," and that the due process hearing officer erred in denying this relief. *Am. Compl.* ¶¶ 152-53. The Court has already decided that the authority upon which Ms. Millay relied in making this argument is inapposite and that Y.M.'s proper stay put placement is at Surry with the Perkins IEP. Accordingly, Ms. Millay cannot demonstrate that she is likely to succeed on the merits of her claim that Y.M.'s stay put placement is at a school she has never attended, let alone a high school given she is only in eighth grade.

In Count II, Ms. Millay contends that the due process hearing officer incorrectly decided Y.M.'s appropriate educational placement in the least restrictive environment. *Id.* ¶ 155. She also requests that the Court order "compensatory educational services to remedy the violations of law by Surry." *Id.* Without a full review of the administrative record on which the due process hearing officer based his decision, the Court cannot assess the correctness of that decision. Comprehensive judicial review of the administrative record is all the more important because in its Answer, Surry denies the bulk of Ms. Millay's allegations that the due process officer committed multiple errors of law and violated her procedural rights. *See generally Def.'s Answer to Am. Compl.* (Docket # 52). Furthermore, when the Court conducts its review of the hearing officer's decision, "the administrative proceedings must be accorded due weight," and the Court will not be "at liberty either to turn a blind eye to administrative findings or to discard them without sound reason." *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1087 (1st Cir. 1993) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). Given the applicable standard of review and the fact that the record is not yet before the Court, Ms. Millay has not demonstrated, by mere allegations in her Amended Complaint, that she is substantially likely to succeed in her appeal of the hearing officer's decision.

Counts III and IV allege intentional discrimination against Y.M. on the basis of her disability in violation of section 504 of the Rehabilitation Act and the ADA, respectively. *Am. Compl.* ¶¶ 157, 159. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly phrased, the ADA mandates that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity."  42 U.S.C. § 12132.  Because "Title II of the ADA was expressly modeled after Section

504 of the Rehabilitation Act," *Theriault v. Flynn*, 162 F.3d 46, 48 n.3 (1st Cir. 1998), the Court

analyzes these two independent claims in the "same manner."[16]  *K v. City of S. Portland*, 407 F.

Supp. 2d 290, 296 (D. Me. 2006).

In her Amended Complaint, Ms. Millay alleges that Surry failed in multiple ways to

provide Y.M. a free appropriate public education and that negotiations with Surry regarding

Y.M.'s education have been fruitless and vexing.  *See, e.g.*, *Am. Compl.* ¶¶ 16, 28-45.

Conspicuously absent from these allegations, however, are any claims that Y.M. is a "qualified

individual," that Surry has discriminated against her, or that Surry has excluded her from

participating in its programs.  As one court recently stated:

> Both the ADA and Section 504 address discrimination against disabled students,
> rather than incorrect or erroneous special education treatments, as in the case of
> IDEA.  Thus, "something more than a mere violation of the IDEA is necessary in
> order to show a violation of Section 504 in the context of educating children with
> disabilities, i.e., a plaintiff must demonstrate that a school district acted with bad
> faith or gross misjudgment."

*Scaggs v. N.Y. Dep't of Educ.*, No. 06-CV-0799 (JFB) (VVP), 2007 U.S. Dist. LEXIS 35860, at

*54 (E.D.N.Y. May 16, 2007) (quoting *Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147,

152 (N.D.N.Y. 1997)); *see Sellers v. Sch. Bd.*, 141 F.3d 524, 529 (4th Cir. 1998); *Colin v.

Schmidt*, 715 F.2d 1, 10 (1st Cir. 1983); *Monahan v. Nebraska*, 687 F.2d 1164, 1170-71 (8th Cir.

1982)); *Mr. I v. Me. Sch. Admin. Dist. 55*, 416 F. Supp. 2d 147, 177 (D. Me. 2006).

---

[16] Injunctive relief is available to remedy violation of either statute.  *Barnes v. Gorman*, 536 U.S. 181, 185-87 (2002).  However, the First Circuit has held that "[w]here the essence of the claim is one stated under the IDEA for denial of [free appropriate public education], no greater remedies than those authorized under the IDEA are made available by recasting the claim as one brought under 42 U.S.C § 1983, Title II of the ADA, or section 504 of the Rehabilitation Act."  *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 19 (1st Cir. 2006).

Furthermore, the Court notes that Ms. Millay unilaterally withdrew Y.M. from Surry in the fall of 2006.  Although she may not have approved of the alternative placements Surry has suggested in the interim, Ms. Millay has neither alleged nor demonstrated affirmative discrimination.  The Court concludes that Ms. Millay has not met her burden of showing a substantial likelihood that she will prevail on either of her Rehabilitation Act or ADA claims.  Given that likelihood of success on the merits is "[t]he *sine qua non*" of the preliminary injunction inquiry, *New Comm Wireless*, 287 F.3d at 9, the Court must deny her motion for a preliminary injunction.

### D.   Surry's Motion to Exclude Evidence

Surry moved to exclude two of the three exhibits attached to the Amended Complaint. The first is a January 18, 2008 memorandum from Ms. Millay to the due process hearing officer regarding Y.M.'s stay put placement.  *Am. Compl.* at Ex. 2.  The second is a collection of documents: an affidavit of Ms. Millay, dated September 10, 2008; an apparently undated photograph of Y.M.; and three letters, dated August 18, September 5, and September 18, 2008. *Am. Compl.* at Ex. 3.  With the exception of the undated photograph and the Millay affidavit, all of the challenged documents appear to post-date the hearing officer's decision, dated June 20, 2008.[17]

The IDEA directs that a court reviewing the decision of a state due process hearing officer "receive the records of the administrative proceedings" and "hear additional evidence at the request of a party[.]"  20 U.S.C. § 1415(i)(2)(B)(i)-(ii).  Nonetheless, as the First Circuit has clarified, no party has an absolute right to introduce additional evidence:

> As a means of assuring that the administrative process is accorded its due weight and that judicial review does not become a trial *de novo*, thereby rendering the administrative hearing nugatory, a party seeking to introduce additional evidence

---

[17] Ms. Millay also attached to the Amended Complaint a copy of the hearing officer's decision itself.  *Am. Compl.* at Ex. 1. Surry has filed this document with the Court previously, *Def.'s Mot. to Stay Oral Argument* at Ex. 1, and does not move for its exclusion.  *See Mot. to Exclude* at 2 n.1.

> at the district court level must provide some solid justification for doing so. To determine whether this burden has been satisfied, *judicial inquiry begins with the administrative record*. A district court[] should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

*Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 996 (1st Cir. 1990) (citation and internal punctuation omitted) (second emphasis added). As the administrative record has not yet been filed, the Court cannot know whether it should be supplemented and without the record it is premature to determine what the record should contain that it does not. The Court grants Surry's motion to exclude exhibits two and three attached to the Amended Complaint, and strikes those exhibits. Surry's motion is granted without prejudice to Ms. Millay's right to file a motion to supplement the record, once the record is filed.

## III.    CONCLUSION

The Court REJECTS the magistrate judge's Recommended Decision (Docket # 18), because it recommends that the Court grant a motion that is now moot. The Court DISMISSES as moot Defendant's Motion to Dismiss (Docket # 6). The Court DENIES Plaintiff's Motion for Preliminary Emergency Injunction (Docket # 3) as to placement at a school other than Surry. The Court GRANTS in part Defendant's Motion to Strike Plaintiff's Reply Brief Objecting to the Magistrate's Recommended Decision (Docket # 23) and therefore STRIKES in part and DENIES in part Plaintiff's Reply and Request for Oral Argument (Docket # 21) such that the Reply is STRUCK and the Request is DENIED. The Court ORDERS that the docket be altered to show that Defendant's Motion for Stay Put Placement (Docket # 37) is not a Motion, but is rather a Supplemental Brief in Support of Defendant's Opposition to Plaintiff's Request for Preliminary Injunction. The Court ORDERS pursuant to 20 U.S.C. § 1415(j) that Defendant

implement Y.M.'s Perkins Individual Education Plan at the Surry School in full accordance with the Corrective Action Plan that is appended to the Maine Department of Education's Complaint Investigation Report, dated July 6, 2007. The Court GRANTS Defendant's Motion to Exclude Evidence Beyond the Administrative Record (Docket # 47), and STRIKES exhibits two and three attached to the Amended Complaint (Docket #s 44-3 & 44-4).

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE


Dated this 28th day of October, 2008