UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOANNE M. MILLAY,<br>as Parent of minor child YRM,<br><br>    Plaintiff,<br><br>v.<br><br>SURRY SCHOOL DEPARTMENT,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil No. 7-178-B-W<br>)<br>)<br>)<br>) |

**ORDER**

The Court now has before it two motions to supplement the administrative record, one by each of the parties. The Surry School Department wants to supplement the record with the affidavit of Melissa Beckwith and a supplemental paper record that consists primarily of "educational records" and IEP Team meeting minutes that have occurred since March of 2008[1] and relate primarily to action taken by Surry in regard to the 2008-2009 school year IEP and in regard to the stay put Order issued by this Court on October 28, 2008. (See Docket Nos. 65 & 67 (the latter being the paper file offered as a supplemental IDEA administrative record.)) By the school department's own admission, these submissions are designed almost entirely as defensive ammunition in the event the court determines the hearing officer's decision to be flawed and seeks to fashion some equitable remedy involving compensatory education, monetary damages, and/or enforcement of its own stay put Order.

---

[1] The Court currently has before it the appeal from the administrative hearing officer's June 20, 2008, decision following the evidentiary hearing on the 2007-2008 IEP which concluded on March 26, 2008. Both parties' submissions acknowledge that there is currently an administrative proceeding in progress relating to the 2008-2009 school year. On October 28, 2008, this Court issued a "stay-put" order vis-à-vis the last agreed to placement which involved placing the student in a public school setting located at the Surry school. Both sides agree that placement has never been implemented, although each side blames the other for the failure to implement the placement.

> "In particular, the evidence Surry seeks to include in the record include documents relating to Surry's efforts to transition YRM to her stay put placement and Plaintiff's refusal to access the stay put placement; documents relating to which placements Surry has continued to offer to the Plaintiff; documents regarding which programs are capable of educating a student having special needs like YRM; and minutes of IEP meetings held since the administrative hearing and bearing on YRM's present level of functioning.
>
> Most importantly, the proposed evidence includes information that would be of assistance to the Court in fashioning a remedy in this case in the event that the Court determines to grant some or all of the relief requested by the Plaintiff."

(Def.'s Mtn. To Supplement, at 2-3.)

Ms. Millay also wants to supplement the record.  (Doc. No. 66.)   In her reply memorandum she explains the eight categories of documents she wants to include:  (1-Doc. 66-2)  Millay's personal five page declaration and affidavit regarding her child's educational needs and her personal observations regarding the Kids' Peace program; (2-Doc. 66-3)  Notes from three separate medical physicians, dated January 16, 2009, January 19, 2009, and August 15, 2008, all of which post date the June 20, 2008, decision of the hearing officer;  (3-Doc. No. 66-4)  Letters from United Cerebral Palsy of Maine (3) dated January 17, 2009, November 5, 2008, and January 14, 2009, plus a letter from a education consultant  for the State of Maine Division for the Blind and Visually Impaired dated January 20, 2009;  (4-Doc. No. 66-5)  Correspondence between Millay and Beckwith and Herlan regarding the scheduling of an IEP team meeting in December 2008;  (5-Doc. No. 66-6)  Millay's Request for Education Records and Testimony;  (6-Doc. No. 66-7)  An October 12, 2007, Draft Agreement between the Surry School Department and Millay (never executed) involving a proposed placement at MDI for the 2008-2009 school year;  (7-Doc. No. 66-8)  An October 8, 2008, letter from Susan

Gendron, Commissioner of Education to Eric Herlan regarding the earlier Complaint Investigation Report relating to July 2007 communications regarding the Department's investigation; and (8-Doc. No. 66-9) A letter from the Supervisor of Diagnostic Evaluation Services at Perkins' School for Blind dated September 18, 2008, and denying admission of YRM at that time.

Millay explains in her motion and reply memorandum that she also wants this court to take testimony and accept affidavits from various witnesses, including herself, the supervisor from the Perkins' School, and her prior attorney. In assessing whether to grant a request for witnesses to testify in a proceeding of this nature, a district court should "weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources." Town of Burlington v. Dep't of Educ. for Com. of Mass., 736 F.2d 773, 791 (1st Cir. 1984). I see no reason in this case for allowing further live or deposition testimony from any of these various witnesses, including Ms. Millay herself. It appears that admission to the Perkins' School is currently a dead letter and there is no need to present further testimony on that issue. Whether or not it could have been an appropriate educational plan at the time the 2007-2008 IEP under consideration was formulated and implemented will be determined as a result of this appeal. If ultimately this court must devise some compensatory educational program for YRM, Perkins' School most clearly is no longer among the options and the evidence already submitted in conjunction with the "preliminary injunction/stay put motion" has already established that fact. Deposing witnesses or taking testimony at an

evidentiary hearing, especially from a host of Perkins' School personnel, will simply increase the expense of this litigation and further delay the resolution of the matter.

As for the written supplementation that both sides wish to make, I am cognizant that Magistrate Judge Cohen recognized that in cases involving the adequacy of IEPs courts have erred on the side of admitting evidence reflecting a child's post-hearing status on the theory that the proffered information "might shed light on the reasonableness of (and thus be relevant to) the earlier decision." Mr. I. v. Maine School Administrative Dist. No. 55, 2004 WL 2397402, * 3 (collecting cases). Evidence concerning the child's current status can, as the First Circuit has pointed out, help this court determine the reasonableness of the "snapshot" of the child taken at the time the IEP under appeal was promulgated. Roland M. v. Concord School Committee, 910 F.2d 983, 992 (1st Cir. 1990). With these admonitions in mind, I will consider the written supplementation offered by the parties.

Ms. Millay vigorously objects to the school's request to supplement, indicating that Surry's activities since August of 2008, and particularly as they relate to the December 16, 2008, IEP meeting, are currently the subject of an investigation by the Maine Department of Education and are open to factual dispute. If, as the school recognizes is a possibility, this court ultimately must take some independent action in terms of fashioning remedial relief and/or a suitable education program for the child, this material would become relevant. Ms. Millay's objection to this supplementation appears to be primarily that the minutes are one-sided and do not accurately reflect what happened at various IEP meetings. Nevertheless, the records submitted by the school do include various letters submitted by Millay attempting to correct the record and explain

her side. There is also the possibility that some of the material could shed light on the reasonableness of the earlier administrative decision as Ms. Millay herself recognizes because she also agrees that *some* of these educational records should be included. I will, therefore, grant the school's motion and incorporate the sealed attachments represented by Docket No. 67 consisting of 218 pages of paper records into the record of this proceeding.

Turning to Ms. Millay's motion to supplement, I will grant that motion in part as well. I have already indicated that I am denying her request to supplement the record with further deposition or live testimony, at least at this juncture. If the Court ultimately determines an evidentiary hearing is warranted on any aspect of this case, testimony will, of course, be allowed. As for the eight categories of materials (See Doc. 73) Ms. Millay wanted to add to the record, I will allow the following materials because in my view they are admissible for the same reasons as the school's requested supplemental material is admitted. The categories are the following: (1) Ms. Millay's personal declaration and affidavit; (2) Letters from YRM's physicians; (3) Letters from YRM's direct service worker and case manager at the United Cerebral Palsy Agency and the Maine Bureau of Rehabilitation's Division for the Blind; (4) the correspondence between Millay and defendant and defendant's attorney regarding the December IEP meeting most of which was already submitted in defendant's supplemental packet; (5) Letters from Perkins School for Blind administrator Chris Underwood.

The items I have excluded are plaintiff's request for education records and testimony (Doc. No. 66-6); the Draft Agreement (Doc. No. 66-7); and the letter from Susan Gendron (Doc. No. 66-8). I exclude these items for the following reasons: (1) the

request regarding education records and testimony is simply too broad and unfocused. Ms. Millay believes the school has withheld certain relevant educational records or unlawfully destroyed certain records. The entire imbroglio was part of the administrative process and it is what it is. Millay complains about the conduct of the hearing officer in not compelling the production of these documents. When the court reviews the record its purpose is to determine the reasonableness and fairness of the hearing officer's decision. I have excluded the Draft Agreement because there are no affidavits or other documents authenticating what it represents and in any event, it apparently was not part of the hearing process but was an attempt to settle the dispute and circumvent the hearing. Ms. Millay wants to supplement the Draft with an affidavit from her then attorney and the school's attorney suggests he would want to supplement the supplement with affidavits from the school officials involved in the negotiations. No such affidavits have appeared with the submissions and this line of inquiry is unlikely to lead any place instructive regarding the merits of the hearing process before the hearing officer. Finally the Susan Gendron letter apparently relates to an objection the school had to certain language in the investigative report. The report is part of the record and the letter between Herlan and Gendron changes nothing and does not supplement the record.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

Date February 27, 2009                /s/ Margaret J. Kravchuk
                                      U.S. Magistrate Judge